UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

**KEY EQUIPMENT FINANCE INC.,**

       **Plaintiffs,**

    **-v-**         **06-CV-944**

**ZIP, L.L.C. and STEVEN IVANKOVICH,**

       **Defendants.**

♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

APPEARANCES:

Lemery Greisler LLC
Gretchen M. Greisler, Esq., of Counsel
Paul A. Levine, Esq., of Counsel
50 Beaver Street
Albany, New York 12207
Attorneys for Plaintiff

Fischer & Mandell LLP
Barry R. Fischer, Esq., of Counsel
546 Fifth Avenue, 115th Floor
New York, New York 10036
Attorneys for Defendant

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

   In this action commenced on August 3, 2006, plaintiff seeks to recover monies allegedly owed by defendants under an equipment lease and a personal guaranty. Presently before the Court are two motions: (1) plaintiff's motion for summary judgment (Dkt. No. 12), and (2) plaintiff's motion for a writ of attachment (Dkt. No. 16). For the reasons set forth below, the Court denies both motions.

## BACKGROUND

In the complaint, plaintiff sues to recover from defendant Zip, LLC ("Zip") $138,073.21 under Equipment Schedule No. 01 (Lease No. 19178), and $112,996.66 under Equipment Schedule No. 02 (Lease No. 19283), both covered by a Master Equipment Lease Agreement ("Master Lease"), executed by Zip on February 21, 2003.  Plaintiff further seeks to recover from Steven Ivankovich ("Ivankovich"), Zip's President, $251,065.97 pursuant to his Personal Guaranty, dated February 25, 2003, of Zip's obligations under the Master Lease.  Plaintiff also requests an award of costs, expenses and reasonable attorneys fees.

Equipment Schedule No. 01, executed by Zip on February 24, 2003, covers a 2003 53' Competition Trailer and accessories.  Equipment Schedule No. 02, executed by Zip on April 28, 2003, covers a second 2003 53' Competition Trailer and accessories.  In each Equipment Schedule, Zip agreed to make payments to plaintiff over a period of sixty months.

It is undisputed that Zip ceased making timely payments in or around February 2005.  In June 2005, plaintiff served on defendants Notices of Default accelerating the payments pursuant to the Master Lease.  Thereafter, defendants surrendered the trailers to plaintiff.

Plaintiff alleges that on November 3, 2005, it served defendants with a Notice of Intent to Sell the trailer covered by Equipment Schedule No. 01 at a private sale on or after November 14, 2005.  Plaintiff further alleges that on November 3, 2005, it served defendants with a Notice of Intent to Sell the trailer covered by Equipment Schedule No. 02 at a private sale on or after January 2, 2006.  On March 6, 2006, plaintiff notified Ivankovich that it had contracted with Nassau Asset Management ("Nassau") for the sale of the trailers, and, according to plaintiff, defendants consented.  Defendants dispute various aspects of these allegations.

Nassau sold the two trailers for a total of $180,000. After the payment of commissions, Nassau remitted the proceeds, $153,000, to plaintiff. Thereafter, on April 25, 2006, plaintiff served on defendants a Notice of Default demanding payment of $209,175.66, the balance due under the Master Lease and guaranty after the application of the sale proceeds.

Upon defendants' failure to pay the deficiency amounts sought, plaintiff commenced this action. Defendants interposed affirmative defenses including failure to provide written notice of default and failure to "achieve a reasonable value" for the trailers. Plaintiff now moves for summary judgment against Zip based on the Master Lease and Equipment Schedules, and against Ivankovich based on his guaranty.

## DISCUSSION - MOTION FOR SUMMARY JUDGMENT

**Standard for summary judgment**

Summary judgment is appropriate "where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the court resolves all ambiguities, and draws all inferences, against the moving party. *See United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

**Nature of the transactions – leases or security interests?**

Plaintiff argues that it is entitled to summary judgment against Zip because it is undisputed that Zip is obligated on the Master Lease and Equipment Schedules and has defaulted

-3-

in payment. Relying on paragraph 22 of the Master Lease, plaintiff contends that Zip waived any defense based on the amounts received from liquidation of the trailers. Plaintiff further argues that it is entitled to summary judgment against Ivankovich under his guaranty, whereby he guaranteed Zip's obligations under the Master Lease and Equipment Schedules and waived any defense stemming from the sale of the equipment.

According to plaintiff, the transactions are covered by Article 2-A of New York's Uniform Commercial Code (McKinney's 2007), which "applies to any transaction, regardless of form, that creates a lease." U.C.C. § 2-A-102. A lessee enjoys relatively few protections under Article 2-A. For example, to establish its entitlement to judgment for the balance due under an equipment finance lease, a creditor need only "submit[] the lease agreement and proof of nonpayment[.]" *Unistar Leasing, Div. of United Computer Capital Corp. v. Betco, Inc.*, 784 N.Y.S.2d 421, 421 (4th Dep't 2004) (quoting *Preferred Capital, Inc. v. PBK, Inc.*, 765 N.Y.S.2d 405, 406 (4th Dep't 2003)). In addition, a guarantor of a lease covered by Article 2-A may waive whatever rights Article 2-A may afford.[1]

In opposition to the motion, defendants contend that the transaction is governed not by

---

[1] For example, the Fourth Department held in *Telmark LLC v. Grunder*, 758 N.Y.S.2d 456, 457 (4th Dep't 2003) (citations omitted, alterations in original):

> Even assuming that UCC article 2-A affords certain rights to a guarantor, we conclude that defendant, by agreeing to the terms of the guaranties, has substituted those terms for any rights to which he may be entitled under article 2-A (*see* 2-A-503 [1]; 2-A-527 [2]; 2-A-528 [1] ). The unconditional guaranties provide in relevant part that, "in the event Lessee defaults on any payment[,] Lessor shall have the right to proceed against the [guarantor] * * * without any proceeding against the Lessee." Plaintiff therefore had no duty to take possession of or sell the dairy barn prior to recovering from defendant the balance of rent due pursuant to the guaranties. Thus, plaintiff met its initial burden of establishing its entitlement to judgment on the issue of damages with respect to the lease of the dairy barn, and defendant failed to raise a material issue of fact precluding summary judgment on that issue.

Article 2-A but rather by Article 9 of the Uniform Commercial Code. Article 9, which covers secured transactions, gives a number of rights to debtors and obligors and imposes a number of duties on secured creditors. For example, a secured creditor seeking to recover a deficiency judgment after a post-default disposition of the collateral bears the burden of establishing that he disposed of the collateral in a commercially reasonable manner. *See* U.C.C. § 9-504(3). This requirement may not be waived by the debtor or guarantor prior to default. *See* U.C.C. § 9-602(g); *see, e.g., Bank of China v. Chan,* 937 F.2d 780, 785-86 (2d Cir. 1991) (discussing U.C.C. § 9-501(3), predecessor to § 9-602); *Citicorp Leasing, Inc. v. United American Funding, Inc.*, 2005 WL 1847300, *8 (S.D.N.Y.); 96 N.Y. Jur. 2d, *Secured Transactions* § 349. Article 9 further imposes a nonwaivable requirement that the secured creditor provide to debtors and guarantors reasonable notification of the time after which disposition of the collateral is to be made. *See* U.C.C. §§ 9-602(g); 9-611; 9-624(a).

Although the parties do not directly address the issue, the Court notes that in certain circumstances a transaction in the form of a lease will be found to create a security interest subject to the protections of Article 9. *See* U.C.C. §§ 1-201(37); 1-203.[2] One such circumstance

---

[2]

Uniform Commercial Code § 1-203, "Lease Distinguished from Security Interest," provides:
>    (a) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
>    (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>>        (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;
>>        (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>>        (3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or

may arise where the lessee is bound to become the owner of the goods at the end of the lease term, *see* U.C.C. § 1-203(b)(2); another may arise where the lessee has an option to become the owner of the goods for nominal additional consideration upon compliance with the lease agreement. *See* U.C.C. § 1-203(b)(4); *see, e.g., Citipostal, Inc. v. Unistar Leasing*, 724 N.Y.S. 2d 555, 558 (4th Dep't 2001).

Here, Equipment Schedule No. 01 states that "[t]he aggregate Total Cost of the equipment is $242,240.63." The schedule provides in part:

> RENT PAYMENT DATES; RENT. Lessee hereby agrees to pay Rent for the Equipment (a) throughout the Initial Term in fifty-nine (59) consecutive monthly installments ... each in an amount equal to $4,295.96 and (b) on the Initial Term Expiration Date, an amount equal to the sum of (i) $4,295.96 *plus* (ii) a balloon payment (the "Balloon Payment") equal to $24,224.06.
> \*\*\*
> LESSEE'S PURCHASE, RENEWAL AND OPTION TERMS. (a) Put Option. With respect to Equipment described on this Schedule, on the Initial Term Expiration Date, Lessee shall pay to Lessor (i) the Balloon Payment and (ii) an amount equal to $1.00. Upon payment in full by Lessee of all Rent (and all other sums) payable to Lessor hereunder, Lessor shall release its interest in the Equipment.

(Paragraph numbering omitted.) The sum of all monthly installment payments is $257,757.60, and the total sum due, including the balloon payment, is $281,981,66.

Equipment Schedule No. 02 states that "[t]he aggregate Total Cost of the equipment is $275,137.50." The pertinent provisions are identical to those quoted above from Equipment Schedule No. 01, except that the monthly installments are $4,879.36 and the balloon payment is $27,513.75. The monthly installment payments total $292,761.60; when the balloon payment is

---

> (4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

added the total sum due is $320,275.35.

Because the issue has not been briefed by the parties, there may be relevant facts of which the Court is not aware. However, certain indicia of secured transactions appear to be present in the transactions in issue. First, Zip is required to purchase the equipment at the end of the terms. *See* U.C.C. § 1-203(b)(2). Next, the purchase prices (*i.e.*, the "balloon" payments), which are less than 10% of the total rental payments, are arguably "nominal." *See* U.C.C. § 1-203(b)(4); *see, e.g., Orix Credit Alliance, Inc. v. Pappas*, 946 F.2d 1258, 1261-62 (7th Cir. 1991) (citing *Matthews v. CTI Container Transport Intern., Inc.*, 871 F.2d 270, 275 (2d Cir. 1989)). Further, the difference between the costs of the trailers as stated in each schedule and the total sum required to be paid (installment payments plus balloon payments) under each schedule (roughly 15%) may well represent finance charges. *See id.* at 1262 (citing *National Equipment Rental, Ltd. v. Priority Electronics Corp.*, 435 F.Supp. 236, 239 (E.D.N.Y. 1977) and *Guardsman Lease Plan, Inc. v. Gibraltar Transmission Corp.*, 494 N.Y.S.2d 59, 64 (Sup.Ct. 1985)). The Court finds a substantial probability that these equipment leases will ultimately be determined to create security interests subject to the requirements of Article 9.

Plaintiff contends that, even if it is subject to the duties imposed by Article 9, it has proven as a matter of law that it performed those duties. Nassau's President, Peter Castagna, testified fairly extensively at his deposition regarding the commercial reasonableness of the sales. Nevertheless, on this record, plaintiff's evidence is not sufficient to establish as a matter of law that both sales were commercially reasonable.[3]

---

[3] Nor does the documentation submitted by plaintiff establish as a matter of law that it gave both defendants reasonable notification prior to disposition of the collateral as required by section 9-611 of the Uniform Commercial Code. Plaintiff's Exhibit G to its Statement of Material Facts

Plaintiff has not demonstrated as a matter of law that the transactions are governed by Article 2-A rather than by Article 9 of the Uniform Commercial Code. Nor has plaintiff demonstrated as a matter of law that, if Article 9 applies, plaintiff has complied with all the requirements imposed thereby in order to recover a deficiency judgment.

**Ivankovich's guaranty**

Plaintiff argues that it is entitled to summary judgment against Ivankovich under his guaranty. Plaintiff points out that Ivankovich guaranteed Zip's obligations on the Master Lease and Equipment Schedules and that the guaranty waives any defense stemming from the sale of the equipment.[4] Plaintiff contends that Ivankovich thus waived any defense based on the amounts

---

appears to reflect a certified mailing of Notices of Intent to Sell pertaining only to Lease 19178. Nor is the matter clarified by the United States Postal Service records attached as Exhibit E to plaintiff's counsel's reply affirmation. In addition, Exhibit G states that the trailer will be sold for $110,000, whereas in fact it was sold for $55,000.

[4] The Personal Guaranty, dated February 25, 2003, includes the following provisions:
> <u>Nature of Guaranty</u>. Guarantor's liability under this Guaranty shall be absolute, primary and direct. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. KEF [*i.e.*, plaintiff] shall not be required to pursue any right or remedy it may have against Lessee under the Lease Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Lessee) before enforcing this Guaranty against Guarantor.
> \*\*\*
> <u>Guarantor Waivers</u>. Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand, or right may be asserted by the Lessee, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Lease Documents, this enforceable and unconditionally binding upon Guarantor regardless of: …. (e) the assertion by KEF against Lessee, Guarantor or any Other Guarantor of any of KEF's rights and remedies provided for under the Lease Documents or existing in its favor in law, equity or bankruptcy; …. (h) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligations; or (i) the destruction, sale, modification or alteration of any item of the Equipment.

received from liquidation of the trailers, such as the defense that they were not sold in a commercially reasonable manner.

The Second Circuit has noted that "Article 9's definition of 'debtor' is written broadly enough to include those who owe payment even if they have no rights in the collateral[,]" such as guarantors. *Bank of China*, 937 F.2d at 786. As stated by the *Bank of China* court:

> [I]t would be odd indeed if the Code allowed a creditor to avoid the protections established for debtors merely by taking the readily available step of forcing the debtor's principals to sign personal guarantees. In sum, the weight and trend of New York law holds a guarantor may not waive the defense of commercial reasonableness.

*Id.* Thus, in the event that the transactions at bar are ultimately found to be governed by Article 9, Ivankovich's waiver will be ineffective in this respect.

**Conclusion – summary judgment**

Plaintiff has not established that it is entitled to judgment as a matter of law. The motion for summary judgment is denied.

## DISCUSSION – MOTION FOR WRIT OF ATTACHMENT

Plaintiff moves for a writ of attachment under section 6201 of New York's Civil Practice Law and Rules. Plaintiff seeks to attach four parcels of real property owned by Ivankovich, all located in Chicago, Illinois. In the alternative, plaintiff seeks a temporary restraining order enjoining defendants from disposing of assets.

Section 6201(1) provides that an order of attachment may be granted in an action for a money judgment when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state[.]" Plaintiff has satisfied section

---

(Paragraph numbering omitted.)

6201(1); it is undisputed that Zip is organized under the laws of the State of Illinois and is not authorized or qualified to do business in New York State.  It is further undisputed that Ivankovich is a resident and domiciliary of the State of Illinois.

New York law further requires a plaintiff seeking attachment for security purposes to show a need for the attachment order and a probability of success on the merits.  *See* N.Y.C.P.L.R. 6212, 6223.  As the Second Circuit observed, "the existence of a statutory ground under Section 6201 is not sufficient absent satisfaction of the other requirements."  *Capital Ventures Intern. v. Republic of Argentina*, 443 F.3d 214, 221 (2d Cir. 2006).

Plaintiff has not persuaded the Court that it is entitled to an attachment order.  Aside from the question of this Court's authority to attach property outside its territorial jurisdiction, *see e.g., Capital Distr. Servs., Ltd. v. Ducor Express Airlines, Inc.*, 440 F.Supp.2d 195, 209 (E.D.N.Y. 2006), the Court notes that plaintiff has not demonstrated the need for an attachment.  *See* N.Y.C.P.L.R. 6223; *Capital Ventures*, 443 F.3d at 221.  Plaintiff submits only a double hearsay statement from plaintiff's attorney, Paul A. Levine, Esq., that defendants' counsel told him that Zip "has ceased operations and is without assets" and that Ivankovich "spends most of his time in Europe and that efforts to enforce any judgment which may be obtained against him in the present action will be very difficult."  Even if plaintiff submitted proof in evidentiary form that Zip is without assets and Ivankovich spends most of his time in Europe, such proof is insufficient to show that attachment is needed.  Nor does the conclusory assertion that efforts to enforce a judgment will be difficult, without more factual support, assist plaintiff.[5]  Moreover, inasmuch as

---

[5] For the same reasons, plaintiff has not established grounds for an attachment under N.Y.C.P.L.R. 6201(3), which permits an order of attachment in an action for a money judgment where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that

plaintiff has not established its entitlement to summary judgment awarding a deficiency for the amount sought or for any other ascertainable amount, plaintiff has not made a sufficient showing of probability of success on the merits to support an order of attachment. *See* N.Y.C.P.L.R. 6212(a).

For the same reasons, the Court declines to award plaintiff any other preliminary relief, such as an order directing Ivankovich not to alienate or encumber the Illinois property. Thus, plaintiff's motion for an attachment or a temporary restraining order is denied.

## CONCLUSION

It is therefore

ORDERED that plaintiff's motion for summary judgment (Dkt. No. 12) is denied; and it is further

ORDERED that plaintiff's motion for a writ of attachment (Dkt. No. 16) is denied.

IT IS SO ORDERED.

May 29, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

---

might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."

-11-